# Commonwealth v. Cioppa

*Ted Dutkowski, assistant district attorney,* for the commonwealth.

*Robert Garvin,* for defendant.

MANNING, *J.,* December 7, 1989 — Before the court for sentencing is Victor Cioppa, age 21, having entered a plea of guilty to an information charging him with two counts of delivery of cocaine in violation of the Controlled Substance, Drug, Device and Cosmetic Act, section 13(a)(30).

In imposing sentence in this case, the court must consider the applicability of the recently enacted mandatory sentencing provisions for drug trafficking found at 18 Pa.C.S. 7508 (drug trafficking sentencing and penalties).[1]

---

1. "(3) A person who is convicted of violating section 13(a)(14) or (30) of the Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca

At the outset, it is essential to set forth a brief factual narrative of the events which led to Mr. Cioppa's conviction. On September 1, 1988, defendant, at the behest of an undercover Pennsylvania state trooper, made a purchase from an unknown individual of approximately one-eighth ounce of a controlled substance which was subsequently weighed and tested to be 3.4 grams of cocaine. The $250 spent on this purchase was provided by the undercover officer who paid Mr. Cioppa $20 for his participation.

On September 6, 1988, defendant made a second purchase, this time one-quarter ounce, weighing 6.7 grams of cocaine, using $500, again provided by the undercover officer. For his participation on this occasion, defendant was permitted to "chip" or "pinch" a "line of cocaine," an amount considered to be approximately one dosage unit for personal use.

---

leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and fine as set forth in this subsection:

"(i) upon first conviction when the amount of the substance involved is at least 2.0 grams and less than 10 grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity and, upon conviction for another offense subject to sentencing under this section: three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in the proceeds from the illegal activity.

"(ii) upon first conviction when the amount of the substance involved is at least 10 grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized and the proceeds from the illegal activity and, upon conviction for another offense subject to sentencing under this section; five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity." 18 Pa.C.S. §7508(a)(3)(i) and (ii).

In determining the "amount of substance involved" for the purpose of sentencing, we are faced with a question of first impression.

Is it appropriate for the court to aggregate the amounts involved upon this "first conviction" absent any instruction to do so in section 7508? Doing so in this case would result in the finding that the defendant delivered 10.1 grams of cocaine triggering a mandatory three-year minimum sentence under 7508(a)(3)(ii).

In the alternative, is the court obliged to impose sentence pursuant to 18 Pa.C.S. 7508(a)(3)(i) since each delivery was more than 2 grams but individually less than 10 grams, and to impose sentences consecutively when faced with multiple sales? Or is the court permitted to impose concurrent sentences on each delivery conviction?

A simple reading of section 7508, when applied to the equally simple facts of this case, raises serious and significant questions: What has the legislature mandated? A mandatory one-, two- or three-year minimum imprisonment? Surely such ambiguity was not intended by the act's proponents, and yet the legislative history is devoid of meaningful direction or instruction.

It is clearly the duty and obligation of the court in interpreting and applying new law, to find and follow the intent of the legislature, in keeping with the precedents of law. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed if possible to give effect to all its provisions." (Legislative intent controls, 1 Pa.C.S. §1921). Unfortunately, an exhaustive search of the legislative record has yielded passionate rhetoric concerning the drug problem and the devastation of drug abuse, but is without

thoughtful comment concerning the applicability and imposition of such penalties among the myriad of factual situations which regularly occur.

Where the platitudes and pronouncements of lawmakers fail to address the appropriate and practical application of new law, it becomes, of necessity, the duty of the court to interpret and discern, to give life and meaning to the law, with the use of judgment, experience and discretion. It is more than interesting to note that the fundamental purpose for the enactment of mandatory penal statutes is to strip courts of the discretion in sentencing which public opinion has rightly or wrongly labeled as abused.

In construing the instant statute, the court may appropriately rely upon the "plain meaning" of the statute, and the construction and interpretation of like statutes in other jurisdictions.

Scholars of the English language may diagram, conjugate and define, but the "plain meaning" of the words "amount of substance involved" in the phrase "shall . . . be sentenced . . . upon first conviction when the amount of substance *involved*," directs the court to total, or aggregate drugs sold in multiple deliveries at the time of conviction. That is simply the "plain meaning."

It also makes little sense that continuous or repetitive acts in violation of the law should not subject the culprit to increasingly stiffer punishment. In the historic context of the law, recidivism has always been met with more severe sentencing. Likewise, it should not be more "profitable" to engage in a series of violations of the law than it would comparatively be to commit a single offense.

In our neighbor state of New Jersey, where the indictment or accusation so provides, the quantities involved in individual acts of manufacturing, dis-

tributing, dispensing or possessing with intent to distribute controlled substances are aggregated in determining the grade of the offense.[2] Also, for violation of the United States Code, where there are multiple transactions or multiple drug types, the quantities of drugs must be added. Guidelines, United States Sentencing Commission, Chapter 2, "Offense Conduct," Part D 2D1.6, October 1987.

Clearly, the weight of authority and common sense dictate that punishment be designed to reach the totality of criminal conduct, gauged by its flagrant repetition as much as its singular enormity. We also note with interest certain legislation pending before the House of Representatives of this commonwealth that would impose mandatory incarceration for sale or delivery on "three separate occasions" within a 90-day period without regard to the quantity of the substances involved.[3] This legislation serves to punish the mere repetitiveness of the conduct, not the totality.

We conclude that the proper method of construing and applying section 7508 is to aggregate the amount of substance involved where multiple of-

---

2. 2C:35-5c provides:

"Where the degree of the offense for violation of this section depends on the quantity of the substance, the quantity involved shall be determined by the trier of fact. Where the indictment or accusation so provides, the quantity involved in individual acts of manufacturing, distribution, dispensing or possessing with intent to distribute may be aggregated in determining the grade of the offense, whether distribution or dispensing is to the same person or several persons, provided that each individual act of manufacturing, distribution, dispensing or possession with intent to distribute was committed within the applicable statute of limitations." L.1987, c. 106, §1, operative July 9, 1987. Amended by L.1988, c.44, §2, effective June 28, 1988.

3. House Bill 1279, Session 1989, introduced April 24, 1989.

fenses are to be considered together for sentencing. However, it is equally clear that the legislature failed to require such a result in the act itself, leaving to the court the discretion to deviate where the interests of justice require.

Having reached this conclusion, we must now turn to its applicability under the specific facts of this case.

In so doing, we are cognizant of the rhetoric which led to the passage of this legislation, particularly the pronouncements of the chief sponsor and Judiciary Committee chairman regarding the expected effect of this legislation. In response to concerns that the act would impose mandatory penalties on those undeserving of such severity, the senator stated:

"I think in all mandatory sentencing there are few cases which we can point out that we would prefer maybe not to have happened or maybe not to have come down as hard on them, but, in the long run, we who represent Pennsylvania and the society of Pennsylvania make a policy decision on the issue we are dealing with — that is sales of drugs . . . This bill is more about deterrents than punishment because it establishes if you do sell to a minor or if you are a big-time dealer — because the legislation provides that you have to have *not a small amount* of marijuana but over two pounds and *over 2.5 grams* before these mandatory sentences come in and up to 50 pounds of marijuana — that these are people who have these types of drugs in their possession, are people who are not the street seller but the individual who is involved in it for a business and the kind of people we all want to get off the street to prevent them from continuing their activities. . ." HB 668, February 23, 1988. Legislative Journal, Senate, Vol. 1. (emphasis supplied)

While the intentions of the sponsor were surely salutary, describing persons who deal in quantities of two to 10 grams of cocaine as "in it for a business" and "not the street seller" collides with reality. Generally speaking, low-level cocaine traffickers are users themselves, often addicted, who sell cocaine to supply their own habits. Street traffickers, users, accommodators, regularly deal in the quantities that were sold in this case, multi-gram and partial ounce amounts. It is the multi-ounce, pound, kilogram and multi-kilo dealer who is "involved in it for a business."

While *anyone* selling addictive drugs is a danger to society and must be dealt with severely, it is extremely doubtful that the lawmakers contemplated a minimum three- to six-year sentence for a person who received $20 and a "line" of cocaine as a go-between in two purchases totalling three-eighths of an ounce for the sum of $750. Yet that is precisely the result that this legislation demands.

Based upon our analysis here, we conclude that the facts and circumstances of this case, coupled with common sense and the interests of justice, dictate that the court opt not to aggregate the substances involved and to impose the minimum of the mandatory sentences, concurrently. To do otherwise, we believe, would require the imposition of a sentence too severe for the conduct involved.